Matthew D. Mellen (Bar No. 233350)
Jessica Galletta (Bar No. 281179)
Eunji Cho (Bar No. 286710)
MELLEN LAW FIRM
411 Borel Avenue, Suite 230
San Mateo, California 94402
Telephone: (650) 638-0120
Facsimile: (650) 638-0125

Attorney for Plaintiffs,
NATHAN TERRY
GERALDINE TERRY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN TERRY, an individual; GERALDINE TERRY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a business entity; U.S. BANK, N.A., a business entity; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>1. Breach of Contract<br><br>2. Violation of California Civil Code § 2923.6<br><br>3. Violation of California Civil Code § 2923.7<br><br>4. Violation of California Civil Code § 2924.17<br><br>5. Violation of California Civil Code § 2924.10<br><br>6. Unfair Business Practices – Violation of Business and Professions Code §17200 *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY ALLEGATIONS

1. In the case at hand, Plaintiffs made timely payments under a Trial Period Plan when Defendants refused to provide a permanent loan modification in breach of the Trial Period Plan. In addition, Defendants recorded a Notice of Default for Plaintiff's Property which was inaccurate and based on an unsubstantiated default. Thereafter, while Plaintiffs had a complete

1
PLAINTIFFS' COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

loan modification application pending, Defendants recorded a Notice of Trustee's Sale, in violation of the new California Homeowner Bill of Rights. Further, Plaintiffs' assigned single points of contact failed to perform the duties delineated by California Civil Code § 2923.7(b). This lawsuit follows.

## JURISDICTION AND VENUE

2. This is an action asserting violations of California State Law. 28 U.S.C. § 1332(a) states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States …." Plaintiffs are citizens of California who bring this action as a result of Defendants' unlawful conduct concerning a residential mortgage loan transaction for the property located at 40135 Margery Court, Fremont, California 94538. Defendant WELLS FARGO BANK, N.A. is a national banking association, with its main office located in Sioux Falls, South Dakota and Defendant U.S. BANK, N.A. is a national banking association, with its main office located in Minneapolis, Minnesota. Therefore, complete diversity of parties exists. In addition, the matter in controversy exceeds the sum of $75,000 as the loan is in the amount of $463,960.00. Therefore, this Court has jurisdiction over this matter based on diversity of citizenship. Moreover, venue is proper this Court because a substantial part of the events giving rise to the claims herein occurred in the City of Fremont. Venue is therefore proper in the United States District Court, Northern District of California.

## PARTIES

3. At all times mentioned herein, Plaintiffs are adult residents of Alameda County, California. Plaintiffs are the sole owner of the property located at 40135 Margery Court, Fremont, California 94538.

4. At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant WELLS FARGO BANK, N.A. (hereinafter "WELLS FARGO") is a diversified financial marketing and/or services company engaged primarily in residential mortgage banking and/or related businesses. Plaintiffs are informed and believe and thereon allege that WELLS

PLAINTIFFS' COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

FARGO is the beneficiary and servicer of Plaintiffs' loan. Plaintiffs are informed and believe and thereon allege that WELLS FARGO regularly conducts business in the State of California.

5. At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant U.S. BANK, N.A. (hereinafter "U.S. BANK") is a diversified financial marketing and/or services company engaged primarily in residential mortgage banking and/or related businesses. Plaintiffs are informed and believe and thereon allege that U.S. BANK is the current holder of Plaintiffs' Note or the investor of Plaintiffs' loan. Plaintiffs are informed and believe and thereon allege that U.S. BANK regularly conducts business in the State of California.

6. Plaintiffs are ignorant of the true name and capacities of each Defendant sued herein under the fictitious names DOES 1 through 50, inclusive, and Plaintiffs will amend this complaint to allege such names and capacities as soon as they are ascertained. Each of said fictitiously named Defendants is responsible in some manner for the wrongful acts for which Plaintiff has complained herein.

7. This court has personal jurisdiction over the parties as Defendant engages in business within the State of California. Defendant's business involves providing mortgage loans and related services to consumers in the State of California.

**AGENCY ALLEGATIONS**

8. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each remaining Defendants. Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest. Additionally, each Defendant has passed any and all liability to their successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

**STATEMENT OF FACTS**

9. On or around November 3, 2006, Plaintiffs NATHAN TERRY and GERALDINE TERRY (hereinafter "Plaintiffs") purchased the property located at 40135 Margery Court, Fremont, California 94538 (hereinafter the "Property"). To secure the financing, Plaintiffs

executed a first-lien Deed of Trust and Promissory Note in favor of WELLS FARGO. Currently, and at all times mentioned herein, Plaintiffs reside in the Property as their principal residence. In addition, Plaintiffs' property is a single-family residence, containing only one dwelling unit.

10. In or around July 2012, Plaintiffs submitted a loan modification application to WELLS FARGO.

11. Thereafter on or around October 24, 2012, WELLS FARGO approved Plaintiffs for a Trial Period Plan. Pursuant to the Trial Period Plan, Plaintiffs were to make three trial period payments of $2,905.04 from November 1, 2012 to January 1, 2013. The Trial Period Plan Terms and Conditions stated, "Upon successful completion of these payments, we will offer you a mortgage modification."

12. Plaintiffs submitted each Trial Plan Agreement payment in full and on time to WELLS FARGO.

13. On or around December 13, 2012, WELLS FARGO sent to Plaintiffs a letter, which stated that the subject mortgage loan was not in first lien position and requested signed subordination agreements from each lien holder on the Property.

14. On December 21, 2012, Plaintiffs attempted to contact their new single point of contact, Tyrone Griffin, to inquire as to the subordination issue. Although Plaintiffs left a voicemail for Mr. Griffin to contact Plaintiffs, Plaintiffs never received a call back. As such, Plaintiffs called the general line and spoke to a Wells Fargo representative. The Wells Fargo representative informed Plaintiffs that the subordination issue involved a grant from Keep Your Home California, however, instructed Plaintiffs to contact Mr. Griffin to resolve the issue.

15. On January 8, 2013, Plaintiffs again attempted to contact Mr. Griffin and left a voicemail. Having not heard back from their single point of contact, Plaintiffs contacted Keep Your Home California directly to inquire about the title issue and were advised that the forms provided by WELLS FARGO were incorrect. Plaintiffs thereafter made numerous attempts to reach Mr. Griffin, however, never received a return call.

16. On or around January 18, 2013, Defendant WELLS FARGO assigned a new single point of contact, Terris Green, to Plaintiffs' account. Thereafter Plaintiffs contacted Mr. Green and left

a message informing him of the timely completion of the three trial period plan payments and inquired as to the loan modification. Mr. Green failed to return Plaintiffs' call.

17. On or around February 27, 2013, Defendant WELLS FARGO sent to Plaintiffs a letter regarding the Keep Your Home California subordination, which included different documents from those previously provided by WELLS FARGO. Therefore, Plaintiffs again reached out to Keep Your Home California, but were again informed that the documents were incorrect. The Keep Your Home California representative then provided an email address and phone number and advised Plaintiffs to have their single point of contact reach him directly regarding the subordination.

18. Plaintiffs immediately called their single point of contact and left a message requesting him to directly contact Keep Your Home California with the provided contact information. In addition, Plaintiffs asked whether they should continue to pay the Trial Period Plan payments, however, Plaintiffs never received a response.

19. To Plaintiffs' shock, on or around March 26, 2013, Defendants sent to Plaintiffs a letter which stated that Plaintiffs do not meet the requirements of mortgage assistance program without any basis for the denial.

20. Plaintiffs are now informed and believe that Defendant WELLS FARGO used the subordination issue as a false pretense in order to delay Plaintiffs' loan modification review, as the Deed of Trust for the loan at issue was already in the first lien position. Specifically, the Deed of Trust for the loan at issue was recorded with the Alameda County Recorder's Office on November 3, 2006, whereas the Deed of Trust which secured the grant from Keep Your Home California was recorded on April 15, 2011. Therefore, contrary to Defendant WELLS FARGO's assertion, the loan at issue was already in the first lien position.

21. Thereafter on or around November 14, 2013, Defendants WELLS FARGO and U.S. BANK caused to be recorded a Notice of Default regarding Plaintiffs' Property with the Alameda County Recorder's Office. According to the Notice of Default, Plaintiffs were allegedly in default for failure to pay the installment of principal and interest which became due on April 1, 2012 and all subsequent installments plus late charges, despite the fact Plaintiffs had been making

payments, including the Trial Period Plan payments of $2,905.04 from November 1, 2012 to January 1, 2013.

22. On or around December 13, 2013, Plaintiffs attempted to contact their new single point of contact, Triza Hubert, however, never received a call back. In fact, Plaintiffs never spoke with Triza Hubert during the entire period in which Triza Hubert was assigned as Plaintiffs' single point of contact.

23. Unable to reach their single point of contact, Plaintiffs called the WELLS FARGO general line and spoke with a representative who advised Plaintiffs to submit a new loan modification application. On or around January 20, 2014, Defendant confirmed receipt of the loan modification application and requested additional documents by April 20, 2014.

24. To Plaintiffs' shock, on or around February 21, 2014, Defendants caused to be recorded a Notice of Trustee's Sale with the Alameda County Recorder's Office. According to the Notice of Trustee's Sale, Plaintiffs' Property was scheduled to be sold at a public auction on March 17, 2014, more than one month prior to Defendant WELLS FARGO's deadline for Plaintiffs to submit documents in support of their loan modification application!

25. This lawsuit follows.

### FIRST CAUSE OF ACTION
### Breach of Contract

26. Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

27. Defendants' conduct as alleged above constitutes a breach of contract.

28. A cause of action for breach of contract lies where (1) a contract exists; (2) plaintiff performed under the contract; (3) defendant breached its obligations under the contract; and (4) plaintiff has been damaged from the breach.

29. On or around October 24, 2012, Plaintiffs and Defendants entered into a Trial Period Plan. Pursuant to the Trial Period Plan, Plaintiffs were to make three trial period payments of $2,905.04 from November 1, 2012 to January 1, 2013. The Trial Period Plan Terms and Conditions stated, "Upon successful completion of these payments, we will offer you a mortgage modification."

30. Thereafter, Plaintiffs submitted, and Defendants accepted, all of the Trial Period Plan payments in full and on time.

31. Plaintiffs allege that Defendants breached the Trial Period Plan by failing to provide Plaintiffs with a permanent modification following Plaintiffs' performance under the Trial Period Plan.

32. As a result of Defendants' breach of contract as alleged herein, Plaintiffs have suffered contract damages, including but not limited to, increased late fees and arrears, credit damage, costs to save their home, the imminent loss of their Property, and attorney's fees.

## SECOND CAUSE OF ACTION
### Violation of Civil Code § 2923.6

33. Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

34. Defendants' conduct, as alleged above, constitutes violations of California Civil Code § 2923.6.

35. In adopting the newly enacted California Homeowners Bill of Rights, the California Legislature declared the following:

> "[i]t is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy."

Cal. Civ. Code § 2920.5, Section 1, subpart (b).

36. Pursuant to California Civil Code § 2923.6(c), "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan

modification application is pending…until…the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period…has expired."

37. In addition, pursuant to California Civil Code § 2923.6(f), "[f]ollowing the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial…"

38. At all times relevant, Plaintiffs were the owner of the Property and resided therein as their primary and principal residence.

39. In the case at hand, Defendants violated Civil Code 2923.6(c) by recording a Notice of Trustee's Sale while Plaintiffs' loan modification application was pending. Specifically, in or around January 2014, Plaintiffs submitted a new loan modification application.

40. Thereafter, on or around January 20, 2014, Defendant WELLS FARGO confirmed receipt of the loan modification application and requested additional documents by April 20, 2014.

41. To Plaintiffs' shock, on or around February 21, 2014, Defendants caused to be recorded a Notice of Trustee's Sale with the Alameda County Recorder's Office, in direct violation of the Civil Code. According to the Notice of Trustee's Sale, Plaintiffs' Property was scheduled to be sold at a public auction on March 17, 2014, more than one month prior to Defendant WELLS FARGO's deadline for Plaintiffs to submit documents in support of their loan modification application!

42. In addition, Defendants violated Civil Code 2923.6(f) by failing to provide Plaintiffs with a written notice identifying the reasons for the denial of a first lien loan modification application. Specifically, on or around March 26, 2013, Defendants sent to Plaintiffs a letter which stated that Plaintiffs do not meet the requirements of mortgage assistance program. The denial letter, however, failed to identify the reasons for the denial of Plaintiffs' first lien loan modification application.

43. As a proximate result, Plaintiffs have suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of their Property as a result of Defendants' material

violation of California Civil Code § 2923.6, which entitle Plaintiffs to an injunction of the foreclosure sale, well as attorney's fees.

## THIRD CAUSE OF ACTION
### Violation of Cal. Civil Code § 2923.7

44. Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

45. Defendant WELLS FARGO's conduct, as alleged above, constitutes acts or practice or practices in violation of California Civil Code § 2923.7.

46. California Civil Code § 2923.7(b) requires the assigned single point of contact be responsible for certain duties associated with the borrower's account and foreclosure alternative request.

47. Specifically, California Civil Code § 2923.7(b)(1) requires that a single point of contact be responsible for communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options. In addition, California Civil Code § 2923.7(b)(2) requires the single point of contact to coordinate receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application. Further, California Civil Code § 2923.7(b)(3) requires that the single point of contact have access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative. Lastly, California Civil Code § 2923.7(b)(4) requires that the single point of contact ensures that a borrower is considered for all foreclosure prevention alternatives offered by the servicer.

48. Plaintiffs allege that Defendant WELLS FARGO violated California Civil Code § 2923.7(b)(1), (b)(2), (b)(3) and (b)(4) by failing altogether to timely communicate with Plaintiffs regarding the loan modification application and by failing to ensure that Plaintiffs were considered for all foreclosure prevention alternatives offered by WELLS FARGO.

49. Specifically, in or around July 2012, Plaintiffs submitted a loan modification to WELLS FARGO. Thereafter on or around October 24, 2012, WELLS FARGO approved Plaintiffs for a Trial Period Plan.

50. While Plaintiff's Trial Period Plan was ongoing, on or around December 13, 2012, WELLS FARGO sent to Plaintiffs a letter, which stated that the subject mortgage loan was not in first lien position and requested signed subordination agreements from each lien holder on the Property. On December 21, 2012, Plaintiffs attempted to contact their new single point of contact, Tyrone Griffin, to inquire as to the subordination request. Although Plaintiffs left a voicemail for Mr. Griffin to contact Plaintiffs, Plaintiffs never received a call back. As such, Plaintiffs called the general line and spoke to a Wells Fargo representative. The Wells Fargo representative informed Plaintiffs that the subordination issue involved a grant from Keep Your Home California, however, instructed Plaintiffs to contact Mr. Griffin to resolve the issue.

51. On January 8, 2013, Plaintiffs again attempted to contact Mr. Griffin and left a voicemail. Having not heard back from their single point of contact, Plaintiffs contacted Keep Your Home California directly to inquire about the title issue and were advised that the forms provided by WELLS FARGO were incorrect. Plaintiffs thereafter made numerous attempts to reach Mr. Griffin, however, never received a return call.

52. On or around January 18, 2013, Defendant assigned a new single point of contact, Terris Green, to Plaintiffs' account. Thereafter Plaintiffs contacted Mr. Green and left a message informing him of the timely completion of the three trial period plan payments and inquired as to the loan modification. Mr. Green failed to return Plaintiffs' call.

53. On or around February 27, 2013, Defendant sent to Plaintiffs a letter regarding the Keep Your Home California subordination, which included different documents from those previously provided by WELLS FARGO. Therefore, Plaintiffs again reached out to Keep Your Home California, but were again informed that the documents were incorrect. The Keep Your Home California representative then provided an email address and phone number and advised Plaintiffs to have their single point of contact reach him directly regarding the subordination.

54. Plaintiffs immediately called their single point of contact and left a message requesting him to directly contact Keep Your Home California with the provided contact information. In addition, Plaintiffs asked whether they should continue to pay the Trial Period Plan payments, however, Plaintiffs never received a response.

55. To Plaintiffs' shock, on or around March 26, 2013, Defendant WELLS FARGO sent to Plaintiffs a letter which stated that Plaintiffs do not meet the requirements of mortgage assistance program without any basis for the denial.

56. Plaintiffs are now informed and believe that Defendant WELLS FARGO used the subordination issue as a false pretense in order to delay Plaintiffs' loan modification review, as the Deed of Trust for the loan at issue was already in the first lien position. Specifically, the Deed of Trust for the loan at issue was recorded with the Alameda County Recorder's Office on November 3, 2006, whereas the Deed of Trust which secured the grant from Keep Your Home California was recorded on April 15, 2011. Therefore, contrary to Defendant WELLS FARGO's assertion, the loan at issue was already in the first lien position and Plaintiffs' single points of contact failed to have access to current information sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

57. In addition, California Civil Code § 2923.7(b)(5) requires that the single point of contact have access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

58. Plaintiffs allege that Defendant violated California Civil Code § 2923.7(b)(5). Specifically, in or around January 2014, Plaintiffs submitted a new loan modification application. Thereafter, on or around January 20, 2014, Defendant confirmed receipt of the loan modification application and requested additional documents by April 20, 2014. To Plaintiffs' shock, however, Defendant caused to be recorded a Notice of Trustee's Sale with the Alameda County Recorder's Office on or around February 21, 2014. According to the Notice of Trustee's Sale, Plaintiffs' Property was scheduled to be sold at a public auction on March 17, 2014, more than one month prior to Defendant's deadline for Plaintiffs to submit documents in support of their loan modification application! Therefore, Plaintiffs' point of contact, Triza Hubert, failed to have

access to individuals with the ability and authority to stop foreclosure proceedings when necessary, in violation of California Civil Code § 2923.7(b)(5).

59. As a proximate result, Plaintiffs have suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of their Property as a result of Defendants' material violation of California Civil Code § 2923.7, which entitle Plaintiffs to an injunction of the foreclosure sale, well as attorney's fees.

## FOURTH CAUSE OF ACTION
### Violation of Cal. Civil Code § 2924.17

60. Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

61. Defendant WELLS FARGO's conduct, as alleged above, constitutes acts or practice or practices in violation of California Civil Code § 2924.17.

62. California Civil Code § 2924.17 holds that, "[b]efore recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." These documents include, among other items, a notice of default and notice of trustee sale. (See Civil Code § 2924.17(a).)

63. Plaintiffs are informed and believe that Defendant violated California Civil Code § 2924.17(b) by recording a Notice of Default Plaintiff's Property which was inaccurate and based on an unsubstantiated default.

64. Specifically, on or around November 14, 2013, Defendants caused to be recorded a Notice of Default regarding Plaintiffs' Property. According to the Notice of Default, Plaintiffs were allegedly in default for failure to pay the installment of principal and interest which became due on April 1, 2012 and all subsequent installments plus late charges, despite the fact Plaintiffs had been making payments, including the Trial Period Plan payments of $2,905.04 from November 1, 2012 to January 1, 2013.

65. As a proximate result, Plaintiffs have suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of their Property as a result of Defendant's violation of

California Civil Code § 2924.17, which entitle Plaintiffs to an injunction of the foreclosure sale, well as attorney's fees.

## FIFTH CAUSE OF ACTION
**Violation of Civil Code § 2924.10**

66. Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

67. Defendant WELLS FARGO's conduct, as alleged above, constitutes acts or practices in violation of California Civil Code § 2924.10.

68. Pursuant to California Civil Code § 2924.10, when a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer must provide a written acknowledgment of the receipt of the documentation within five business days of receipt. In addition, the mortgage servicer must include with the initial acknowledgment of receipt of the loan modification application, information such as an estimate of when a decision on the loan modification will be made, any expiration dates for submitted documents, and any deficiency in the application.

69. Plaintiffs allege that Defendant violated California Civil Code § 2924.10 by failing to provide information such as an estimate of when a decision on the loan modification will be made and any expiration dates for submitted documents. Specifically, in or around January 2014, Plaintiffs submitted a loan modification application. Thereafter, on or around January 20, 2014, Defendant confirmed receipt of the loan modification application and requested additional documents by April 20, 2014. However, Defendant failed to provide information as to an estimate of when a decision on the loan modification will be made and any expiration dates for submitted documents, in violation of California Civil Code § 2924.10

70. To Plaintiffs' shock, on or around February 21, 2014, Defendants caused to be recorded a Notice of Trustee's Sale with the Alameda County Recorder's Office.

71. As a proximate result, Plaintiffs have suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of their Property as a result of Defendant's material

violation of California Civil Code § 2924.10, which entitle Plaintiffs to an injunction of the foreclosure sale, well as attorney's fees.

## SIXTH CAUSE OF ACTION
**Unfair Competition – Violation of Business and Professions Code § 17200 *et seq.***

72. Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

73. Defendants' conduct, as alleged above, constitutes unlawful business practices, as defined in the California Business and Professions Code § 17200 *et seq.* California Business and Professions Code § 17200 *et seq.* borrows violations from other statutes and laws and makes them unlawful to engage in as a business practice. Plaintiffs' California Business and Professions Code § 17200 allegations are *tethered* to the following laws:

74. Defendants' breach of contract constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

75. Defendants' violation of California Civil Code § 2923.6 constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

*76.* Defendant WELLS FARGO's violation of California Civil Code § 2923.7 constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

*77.* Defendant WELLS FARGO's violation of California Civil Code § 2924.17 constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

78. Defendant WELLS FARGO's violation of California Civil Code § 2924.10 constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

79. As a result of Defendants' wrongful conduct, Plaintiffs have suffered various damages and injuries according to proof at trial, including but not limited to foreclosure fees and imminent loss of their home.

80. Plaintiffs seek injunctive relief enjoining Defendants from engaging in the unfair business practices described herein.

81. Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

### **DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

WHEREFORE, Plaintiffs NATHAN TERRY and GERALDINE TERRY demand a trial by jury. Plaintiffs pray for judgment and order against Defendants, as follows:

1. That judgment is entered in Plaintiffs' favor and against Defendants, and each of them;
2. For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;
3. For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them from causing the Property to be sold, assigned, transferred to a third-party, or taken by anyone or any entity;
4. For a preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them from seeking to evict Plaintiffs until the claims herein are resolved:
5. For an order stating that Defendants engaged in unlawful business practices;
6. For damages, disgorgement, and injunctive relief;
7. For compensatory damages, attorneys' fees, and costs according to proof at trial;
8. For such other and further relief as the Court may deem just and proper.

DATED: March 31, 2015         Respectfully submitted,

MELLEN LAW FIRM


___*/s/ Eunji Cho*___
Eunji Cho, Esq.
Attorney for Plaintiffs
NATHAN TERRY
GERALDINE TERRY