1
2
3
4

Matthew D. Mellen (Bar No. 233350)
Jessica Galletta (Bar No. 281179)
Eunji Cho (Bar No. 286710)
MELLEN LAW FIRM
411 Borel Avenue, Suite 230
San Mateo, California 94402
Telephone:   (650) 638-0120
Facsimile:    (650) 638-0125

5
6

Attorney for Plaintiffs,
NATHAN TERRY
GERALDINE TERRY

7

8

9

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17

| | |
|---|---|
| NATHAN TERRY, an individual; GERALDINE TERRY, an individual,<br><br>            Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A., a business entity; U.S. BANK, N.A., a business entity; and DOES 1 through 50, inclusive,<br><br>         Defendants. | Case No.:  3:15-cv-01483-WHA<br><br>[Assigned to the Hon. William Alsup]<br><br>**DECLARATION OF SARAH SHAPERO IN SUPPORT OF MOTION FOR LEAVE TO AMEND**<br><br>Date:     July 21, 2016<br>Time:    8:00 a.m.<br>Ctrm.:   8, 19th Floor<br><br>Complaint Filed:  March 31, 2015<br>Trial Date:     April 3, 2017 |

18
19
20
21
22
23
24
25
26
27
28

I, SARAH SHAPERO, declare and state:

1.      I am an attorney admitted to practice law in California and before the above-captioned Court.  I am an attorney with the Mellen Law Firm, counsel for Plaintiffs in the above captioned matter.  I have personal knowledge of the following facts and if called upon as a witness, I could and would competently testify to their veracity.

2.      On or around March 31, 2015, Plaintiffs filed the above mentioned case.  Thereafter, on or around April 18, 2016, Defendant WELLS FARGO BANK filed a Motion to Dismiss Plaintiffs' Complaint which was fully briefed and which came on for hearing on or around May 26, 2016.  Thereafter, this Court issued an Order denying Defendant's Motion to Dismiss in part and granting the Motion to Dismiss in part.  Specifically, the Motion to Dismiss was denied in regards to Plaintiffs' claims for breach of contract, violation of Cal. Civ. Code § 2923.6 as to the 2012 loan modification application, violation of Cal. Civ. Code §§ 2923.7 and 2923.17 and for violations of Cal. Business and Professions Code § 17200.  The Motion to Dismiss Plaintiffs' claims for violation of Cal. Civ. Code § 2924.10 and 2923.6 (in regards to Plaintiffs' 2014 loan modification application) was granted.  The Order directed that Plaintiffs file a motion for leave to amend the claims related to the 2014 application.

3.      Attached hereto as Exhibit, "A" is a true and correct copy of the First Amended Complaint wherein Plaintiffs have addressed the deficiencies noted in the Court's Order.

I declare under the penalty of perjury under the laws of the United States that the above is true and correct.  Executed on June 16, 2016, in San Mateo, California.


DATED: June 16, 2016                          Respectfully submitted,

                                              MELLEN LAW FIRM


                                              ___/s/ Sarah Shapero_____
                                              Sarah Shapero, Esq.
                                              Attorney for Plaintiffs
                                              NATHAN TERRY
                                              GERALDINE TERRY

1

# EXHIBIT A

1  Matthew D. Mellen (Bar No. 233350)
   Jessica Galletta (Bar No. 281179)
2  Eunji Cho (Bar No. 286710)
   MELLEN LAW FIRM
3  411 Borel Avenue, Suite 230
   San Mateo, California 94402
4  Telephone:   (650) 638-0120
   Facsimile:    (650) 638-0125

5  Attorney for Plaintiffs,
   NATHAN TERRY
6  GERALDINE TERRY

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10  NATHAN TERRY, an individual; GERALDINE      Case No.:  3:15-cv-01483-WHA
    TERRY, an individual,
11                                               FIRST AMENDED COMPLAINT FOR
                    Plaintiffs,                  DAMAGES AND EQUITABLE RELIEF
12
            v.                                   1.   Breach of Contract
13
    WELLS FARGO BANK, N.A., a business           2.   Violation of California Civil Code §
14  entity; U.S. BANK, N.A., a business entity; and      2923.6
    DOES 1 through 50, inclusive,
15                                               3.   Violation of California Civil Code §
                    Defendants.                       2923.7
16
                                                 4.   Violation of California Civil Code §
17                                                    2924.17

18                                               5.   Violation of 12 C.F.R. 1024.41(g)

19                                               6.   Unfair Business Practices – Violation of
                                                      Business and Professions Code §17200
20                                                    *et seq.*

21
                                                 DEMAND FOR JURY TRIAL
22

23                      PRELIMINARY ALLEGATIONS

24  1.      In the case at hand, Plaintiffs made timely payments under a Trial Period Plan when

25  Defendants refused to provide a permanent loan modification in breach of the Trial Period Plan.

26  In addition, Defendants recorded a Notice of Default for Plaintiff's Property which was

27  inaccurate and based on an unsubstantiated default.  Thereafter, while Plaintiffs had a complete

28  loan modification application pending, Defendants recorded a Notice of Trustee's Sale, in

                                         1

1   violation of the new California Homeowner Bill of Rights.  Further, Plaintiffs' assigned single

2   points of contact failed to perform the duties delineated by California Civil Code § 2923.7(b).

3   This lawsuit follows.

4                                    **JURISDICTION AND VENUE**

5   2.      This is an action asserting violations of California State Law.  28 U.S.C. § 1332(a) states

6   that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in

7   controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

8   (1) citizens of different States …."  Plaintiffs are citizens of California who bring this action as a

9   result of Defendants' unlawful conduct concerning a residential mortgage loan transaction for the

10  property located at 40135 Margery Court, Fremont, California 94538.  Defendant WELLS

11  FARGO BANK, N.A. is a national banking association, with its main office located in Sioux

12  Falls, South Dakota and Defendant U.S. BANK, N.A. is a national banking association, with its

13  main office located in Minneapolis, Minnesota. Therefore, complete diversity of parties exists.  In

14  addition, the matter in controversy exceeds the sum of $75,000 as the loan is in the amount of

15  $463,960.00.  Therefore, this Court has jurisdiction over this matter based on diversity of

16  citizenship.  Moreover, venue is proper this Court because a substantial part of the events giving

17  rise to the claims herein occurred in the City of Fremont.  Venue is therefore proper in the United

18  States District Court, Northern District of California.

19                                           **PARTIES**

20  3.      At all times mentioned herein, Plaintiffs are adult residents of Alameda County,

21  California.  Plaintiffs are the sole owner of the property located at 40135 Margery Court,

22  Fremont, California 94538.

23  4.      At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that

24  Defendant WELLS FARGO BANK, N.A. (hereinafter "WELLS FARGO") is a diversified

25  financial marketing and/or services company engaged primarily in residential mortgage banking

26  and/or related businesses.  Plaintiffs are informed and believe and thereon allege that WELLS

27  FARGO is the beneficiary and servicer of Plaintiffs' loan.  Plaintiffs are informed and believe and

28  thereon allege that WELLS FARGO regularly conducts business in the State of California.

5.      At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant U.S. BANK, N.A. (hereinafter "U.S. BANK") is a diversified financial marketing and/or services company engaged primarily in residential mortgage banking and/or related businesses.  Plaintiffs are informed and believe and thereon allege that U.S. BANK is the current holder of Plaintiffs' Note or the investor of Plaintiffs' loan.  Plaintiffs are informed and believe and thereon allege that U.S. BANK regularly conducts business in the State of California.

6.      Plaintiffs are ignorant of the true name and capacities of each Defendant sued herein under the fictitious names DOES 1 through 50, inclusive, and Plaintiffs will amend this complaint to allege such names and capacities as soon as they are ascertained. Each of said fictitiously named Defendants is responsible in some manner for the wrongful acts for which Plaintiff has complained herein.

7.      This court has personal jurisdiction over the parties as Defendant engages in business within the State of California.  Defendant's business involves providing mortgage loans and related services to consumers in the State of California.

<u>AGENCY ALLEGATIONS</u>

8.      Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each remaining Defendants.  Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest.  Additionally, each Defendant has passed any and all liability to their successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

<u>STATEMENT OF FACTS</u>

9.      On or around November 3, 2006, Plaintiffs NATHAN TERRY and GERALDINE TERRY (hereinafter "Plaintiffs") purchased the property located at 40135 Margery Court, Fremont, California 94538 (hereinafter the "Property").  To secure the financing, Plaintiffs executed a first-lien Deed of Trust and Promissory Note in favor of WELLS FARGO.  Currently,

and at all times mentioned herein, Plaintiffs reside in the Property as their principal residence.  In addition, Plaintiffs' property is a single-family residence, containing only one dwelling unit.

10.     In or around July 2012, Plaintiffs submitted a loan modification application to WELLS FARGO.

11.     Thereafter on or around October 24, 2012, WELLS FARGO approved Plaintiffs for a Trial Period Plan.  Pursuant to the Trial Period Plan, Plaintiffs were to make three trial period payments of $2,905.04 from November 1, 2012 to January 1, 2013.  The Trial Period Plan Terms and Conditions stated, "Upon successful completion of these payments, we will offer you a mortgage modification."

12.     Plaintiffs submitted each Trial Plan Agreement payment in full and on time to WELLS FARGO.

13.     On or around December 13, 2012, WELLS FARGO sent to Plaintiffs a letter, which stated that the subject mortgage loan was not in first lien position and requested signed subordination agreements from each lien holder on the Property.

14.     On December 21, 2012, Plaintiffs attempted to contact their new single point of contact, Tyrone Griffin, to inquire as to the subordination issue.  Although Plaintiffs left a voicemail for Mr. Griffin to contact Plaintiffs, Plaintiffs never received a call back.  As such, Plaintiffs called the general line and spoke to a Wells Fargo representative.  The Wells Fargo representative informed Plaintiffs that the subordination issue involved a grant from Keep Your Home California, however, instructed Plaintiffs to contact Mr. Griffin to resolve the issue.

15.     On January 8, 2013, Plaintiffs again attempted to contact Mr. Griffin and left a voicemail. Having not heard back from their single point of contact, Plaintiffs contacted Keep Your Home California directly to inquire about the title issue and were advised that the forms provided by WELLS FARGO were incorrect. Plaintiffs thereafter made numerous attempts to reach Mr. Griffin, however, never received a return call.

16.     On or around January 18, 2013, Defendant WELLS FARGO assigned a new single point of contact, Terris Green, to Plaintiffs' account.  Thereafter Plaintiffs contacted Mr. Green and left

a message informing him of the timely completion of the three trial period plan payments and inquired as to the loan modification.  Mr. Green failed to return Plaintiffs' call.

17.     On or around February 27, 2013, Defendant WELLS FARGO sent to Plaintiffs a letter regarding the Keep Your Home California subordination, which included different documents from those previously provided by WELLS FARGO.  Therefore, Plaintiffs again reached out to Keep Your Home California, but were again informed that the documents were incorrect.  The Keep Your Home California representative then provided an email address and phone number and advised Plaintiffs to have their single point of contact reach him directly regarding the subordination.

18.     Plaintiffs immediately called their single point of contact and left a message requesting him to directly contact Keep Your Home California with the provided contact information.  In addition, Plaintiffs asked whether they should continue to pay the Trial Period Plan payments, however, Plaintiffs never received a response.

19.     To Plaintiffs' shock, on or around March 26, 2013, Defendants sent to Plaintiffs a letter which stated that Plaintiffs do not meet the requirements of mortgage assistance program without any basis for the denial.

20.     Plaintiffs are now informed and believe that Defendant WELLS FARGO used the subordination issue as a false pretense in order to delay Plaintiffs' loan modification review, as the Deed of Trust for the loan at issue was already in the first lien position. Specifically, the Deed of Trust for the loan at issue was recorded with the Alameda County Recorder's Office on November 3, 2006, whereas the Deed of Trust which secured the grant from Keep Your Home California was recorded on April 15, 2011.  Therefore, contrary to Defendant WELLS FARGO's assertion, the loan at issue was already in the first lien position.

21.     Thereafter on or around November 14, 2013, Defendants WELLS FARGO and U.S. BANK caused to be recorded a Notice of Default regarding Plaintiffs' Property with the Alameda County Recorder's Office.  According to the Notice of Default, Plaintiffs were allegedly in default for failure to pay the installment of principal and interest which became due on April 1, 2012 and all subsequent installments plus late charges, despite the fact Plaintiffs had been making

payments, including the Trial Period Plan payments of $2,905.04 from November 1, 2012 to January 1, 2013.

22.     On or around December 13, 2013, Plaintiffs attempted to contact their new single point of contact, Triza Hubert, however, never received a call back.  In fact, Plaintiffs never spoke with Triza Hubert during the entire period in which Triza Hubert was assigned as Plaintiffs' single point of contact.

23.     Unable to reach their single point of contact, Plaintiffs called the WELLS FARGO general line and spoke with a representative who advised Plaintiffs to submit a new loan modification application.  The representative indicated that she would send Plaintiffs the loan modification application which they were to fill out and return.  Plaintiffs received the application packet from WELLS FARGO on or around January 6, 2014.  The packet contained a Request for Mortgage Assistance ("RMA") application and a 4506-t form.  The RMA form and the cover letter contained therewith provided that these two forms were the only needed to complete Plaintiffs' application.  Therefore, on or around January 14, 2014, Plaintiffs submitted the complete RMA form along with the 4506-t form to Wells Fargo via facsimile and FedEx thereby submitting all documents requested by Wells Fargo.

24.     Thereafter, on or around January 14, January 15, and January 17, 2016, Defendant sent Plaintiffs letters confirming receipt of Plaintiffs' application and would inform Plaintiffs if any additional documents were needed.  Thereafter, on or around January 20, 2014, Defendant sent Plaintiffs a letter requesting that Plaintiffs submit additional documents which were not initially requested from Plaintiffs by Defendant.  Specifically, the letter stated that Plaintiffs would need to submit proof of income by no later than April 20, 2014.  The letter also stated that "[w]e'll continue to work with you to help you avoid a foreclosure sale….[i]f your loan has been referred to foreclosure, we will not conduct a foreclosure sale on this loan while your documents are being reviewed."  Plaintiffs began gathering the requested documents while simultaneously attempting to reach their single point of contact, Triza Hubert, to confirm the deadline to submit the additional documents, however, Ms. Hubert never returned Plaintiffs' calls.

25.     On or around February 10, 2014, Defendant sent Plaintiff another letter which was identical to the January 20, 2014 requesting proof of income by April 20, 2014.  On February 14, 2014, Defendant sent Plaintiffs another letter stating that their single point of contact would now be Natalie Veach.  Thereafter, Ms. Veach sent Plaintiffs another copy of the January 20, 2014 letter, dated February 25, 2014, requesting proof of income by April 20, 2014.

26.     To Plaintiffs' shock, on or around February 21, 2014, Defendants caused to be recorded a Notice of Trustee's Sale with the Alameda County Recorder's Office.  According to the Notice of Trustee's Sale, Plaintiffs' Property was scheduled to be sold at a public auction on March 17, 2014, more than one month prior to Defendant WELLS FARGO's deadline for Plaintiffs to submit additional documents in support of their loan modification application!

27.     Furthermore, on or around April 1, 2014, within the time frame specified by WELLS FARGO, Plaintiffs submitted all of the requested documents to Defendant.

28.     This lawsuit follows.

### FIRST CAUSE OF ACTION
**Breach of Contract**

29.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

30.     Defendants' conduct as alleged above constitutes a breach of contract.

31.     A cause of action for breach of contract lies where (1) a contract exists; (2) plaintiff performed under the contract; (3) defendant breached its obligations under the contract; and (4) plaintiff has been damaged from the breach.

32.     On or around October 24, 2012, Plaintiffs and Defendants entered into a Trial Period Plan. Pursuant to the Trial Period Plan, Plaintiffs were to make three trial period payments of $2,905.04 from November 1, 2012 to January 1, 2013.  The Trial Period Plan Terms and Conditions stated, "Upon successful completion of these payments, we will offer you a mortgage modification."

33.     Thereafter, Plaintiffs submitted, and Defendants accepted, all of the Trial Period Plan payments in full and on time.

34.     Plaintiffs allege that Defendants breached the Trial Period Plan by failing to provide

Plaintiffs with a permanent modification following Plaintiffs' performance under the Trial Period

Plan.

35.     As a result of Defendants' breach of contract as alleged herein, Plaintiffs have suffered

contract damages, including but not limited to, increased late fees and arrears, credit damage,

costs to save their home, the imminent loss of their Property, and attorney's fees.

**SECOND CAUSE OF ACTION**
**Violation of Civil Code § 2923.6**

36.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they

were fully set forth herein.

37.     Defendants' conduct, as alleged above, constitutes violations of California Civil Code §

2923.6.

38.     In adopting the newly enacted California Homeowners Bill of Rights, the California

Legislature declared the following:

> "[i]t is essential to the economic health of this state to mitigate the negative
> effects on the state and local economies and the housing market that are the
> result of continued foreclosures by modifying the foreclosure process to ensure
> that borrowers who may qualify for a foreclosure alternative are considered for,
> and have a meaningful opportunity to obtain, available loss mitigation options.
> These changes to the state's foreclosure process are essential to ensure that the
> current crisis is not worsened by unnecessarily adding foreclosed properties to
> the market when an alternative to foreclosure may be available. Avoiding
> foreclosure, where possible, will help stabilize the state's housing market and
> avoid the substantial, corresponding negative effects of foreclosures on families,
> communities, and the state and local economy."

Cal. Civ. Code § 2920.5, Section 1, subpart (b).

39.     Pursuant to California Civil Code § 2923.6(c), "[i]f a borrower submits a complete

application for a first lien loan modification offered by, or through, the borrower's mortgage

servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record

a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan

modification application is pending…until…the mortgage servicer makes a written determination

8

1  that the borrower is not eligible for a first lien loan modification, and any appeal period…has

2  expired."

3  40.     In addition, pursuant to California Civil Code § 2923.6(f), "[f]ollowing the denial of a

4  first lien loan modification application, the mortgage servicer shall send a written notice to the

5  borrower identifying the reasons for denial…"

6  41.     At all times relevant, Plaintiffs were the owner of the Property and resided therein as their

7  primary and principal residence.

8  42.     Defendants violated Civil Code 2923.6(f) by failing to provide Plaintiffs with a written

9  notice identifying the reasons for the denial of a first lien loan modification application.

10  Specifically, on or around March 26, 2013, Defendants sent to Plaintiffs a letter which stated that

11  Plaintiffs do not meet the requirements of mortgage assistance program.  The denial letter,

12  however, failed to identify the reasons for the denial of Plaintiffs' first lien loan modification

13  application.

14  43.     As a proximate result, Plaintiffs have suffered, and will continue to suffer, substantial and

15  irreparable injury from the imminent loss of their Property as a result of Defendants' material

16  violation of California Civil Code § 2923.6, which entitle Plaintiffs to an injunction of the

17  foreclosure sale, well as attorney's fees.

18
19

**<u>THIRD CAUSE OF ACTION</u>**
**Violation of Cal. Civil Code § 2923.7**

20  44.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they

21  were fully set forth herein.

22  45.     Defendant WELLS FARGO's conduct, as alleged above, constitutes acts or practice or

23  practices in violation of California Civil Code § 2923.7.

24  46.     California Civil Code § 2923.7(b) requires the assigned single point of contact be

25  responsible for certain duties associated with the borrower's account and foreclosure alternative

26  request.

27  47.     Specifically, California Civil Code § 2923.7(b)(1) requires that a single point of contact be

28  responsible for communicating the process by which a borrower may apply for an available

9

foreclosure prevention alternative and the deadline for any required submissions to be considered for these options. In addition, California Civil Code § 2923.7(b)(2) requires the single point of contact to coordinate receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application. Further, California Civil Code § 2923.7(b)(3) requires that the single point of contact have access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative. Lastly, California Civil Code § 2923.7(b)(4) requires that the single point of contact ensures that a borrower is considered for all foreclosure prevention alternatives offered by the servicer.

48.     Plaintiffs allege that Defendant WELLS FARGO violated California Civil Code § 2923.7(b)(1), (b)(2), (b)(3) and (b)(4) by failing altogether to timely communicate with Plaintiffs regarding the loan modification application and by failing to ensure that Plaintiffs were considered for all foreclosure prevention alternatives offered by WELLS FARGO.

49.     Specifically, in or around July 2012, Plaintiffs submitted a loan modification to WELLS FARGO. Thereafter on or around October 24, 2012, WELLS FARGO approved Plaintiffs for a Trial Period Plan.

50.     While Plaintiff's Trial Period Plan was ongoing, on or around December 13, 2012, WELLS FARGO sent to Plaintiffs a letter, which stated that the subject mortgage loan was not in first lien position and requested signed subordination agreements from each lien holder on the Property. On December 21, 2012, Plaintiffs attempted to contact their new single point of contact, Tyrone Griffin, to inquire as to the subordination request. Although Plaintiffs left a voicemail for Mr. Griffin to contact Plaintiffs, Plaintiffs never received a call back. As such, Plaintiffs called the general line and spoke to a Wells Fargo representative. The Wells Fargo representative informed Plaintiffs that the subordination issue involved a grant from Keep Your Home California, however, instructed Plaintiffs to contact Mr. Griffin to resolve the issue.

51.     On January 8, 2013, Plaintiffs again attempted to contact Mr. Griffin and left a voicemail. Having not heard back from their single point of contact, Plaintiffs contacted Keep Your Home California directly to inquire about the title issue and were advised that the forms provided by

1   WELLS FARGO were incorrect. Plaintiffs thereafter made numerous attempts to reach Mr.

2   Griffin, however, never received a return call.

3   52.    On or around January 18, 2013, Defendant assigned a new single point of contact, Terris

4   Green, to Plaintiffs' account.  Thereafter Plaintiffs contacted Mr. Green and left a message

5   informing him of the timely completion of the three trial period plan payments and inquired as to

6   the loan modification.  Mr. Green failed to return Plaintiffs' call.

7   53.    On or around February 27, 2013, Defendant sent to Plaintiffs a letter regarding the Keep

8   Your Home California subordination, which included different documents from those previously

9   provided by WELLS FARGO.  Therefore, Plaintiffs again reached out to Keep Your Home

10  California, but were again informed that the documents were incorrect.  The Keep Your Home

11  California representative then provided an email address and phone number and advised Plaintiffs

12  to have their single point of contact reach him directly regarding the subordination.

13  54.    Plaintiffs immediately called their single point of contact and left a message requesting

14  him to directly contact Keep Your Home California with the provided contact information.  In

15  addition, Plaintiffs asked whether they should continue to pay the Trial Period Plan payments,

16  however, Plaintiffs never received a response.

17  55.    To Plaintiffs' shock, on or around March 26, 2013, Defendant WELLS FARGO sent to

18  Plaintiffs a letter which stated that Plaintiffs do not meet the requirements of mortgage assistance

19  program without any basis for the denial.

20  56.    Plaintiffs are now informed and believe that Defendant WELLS FARGO used the

21  subordination issue as a false pretense in order to delay Plaintiffs' loan modification review, as

22  the Deed of Trust for the loan at issue was already in the first lien position.  Specifically, the Deed

23  of Trust for the loan at issue was recorded with the Alameda County Recorder's Office on

24  November 3, 2006, whereas the Deed of Trust which secured the grant from Keep Your Home

25  California was recorded on April 15, 2011.  Therefore, contrary to Defendant WELLS FARGO's

26  assertion, the loan at issue was already in the first lien position and Plaintiffs' single points of

27  contact failed to have access to current information sufficient to timely, accurately, and

28  adequately inform the borrower of the current status of the foreclosure prevention alternative.

11

57.     In addition, California Civil Code § 2923.7(b)(5) requires that the single point of contact have access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

58.     Plaintiffs allege that Defendant violated California Civil Code § 2923.7(b)(5). Specifically, in or around January 2014, Plaintiffs submitted a new loan modification application. Thereafter, on or around January 20, 2014, Defendant confirmed receipt of the loan modification application and requested additional documents by April 20, 2014.  To Plaintiffs' shock, however, Defendant caused to be recorded a Notice of Trustee's Sale with the Alameda County Recorder's Office on or around February 21, 2014.  According to the Notice of Trustee's Sale, Plaintiffs' Property was scheduled to be sold at a public auction on March 17, 2014, more than one month prior to Defendant's deadline for Plaintiffs to submit documents in support of their loan modification application!  Therefore, Plaintiffs' point of contact, Triza Hubert, failed to have access to individuals with the ability and authority to stop foreclosure proceedings when necessary, in violation of California Civil Code § 2923.7(b)(5).

59.     As a proximate result, Plaintiffs have suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of their Property as a result of Defendants' material violation of California Civil Code § 2923.7, which entitle Plaintiffs to an injunction of the foreclosure sale, well as attorney's fees.

## FOURTH CAUSE OF ACTION
### Violation of Cal. Civil Code § 2924.17

60.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

61.     Defendant WELLS FARGO's conduct, as alleged above, constitutes acts or practice or practices in violation of California Civil Code § 2924.17.

62.     California Civil Code § 2924.17 holds that, "[b]efore recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose,

including the borrower's loan status and loan information." These documents include, among other items, a notice of default and notice of trustee sale. (See Civil Code § 2924.17(a).)

63.     Plaintiffs are informed and believe that Defendant violated California Civil Code § 2924.17(b) by recording a Notice of Default Plaintiff's Property which was inaccurate and based on an unsubstantiated default.

64.     Specifically, on or around November 14, 2013, Defendants caused to be recorded a Notice of Default regarding Plaintiffs' Property. According to the Notice of Default, Plaintiffs were allegedly in default for failure to pay the installment of principal and interest which became due on April 1, 2012 and all subsequent installments plus late charges, despite the fact Plaintiffs had been making payments, including the Trial Period Plan payments of $2,905.04 from November 1, 2012 to January 1, 2013.

65.     As a proximate result, Plaintiffs have suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of their Property as a result of Defendant's violation of California Civil Code § 2924.17, which entitle Plaintiffs to an injunction of the foreclosure sale, well as attorney's fees.

## FIFTH CAUSE OF ACTION
### Violation of 12 C.F.R. 1024.41(f)(2)
(Against Defendant WELLS FARGO BANK)

66.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

67.     The loan in question is a federally chartered loan under 12 C.F.R.1024.2. Specifically, the loan is secured by a first lien on residential real property, upon which there is located a structure designed principally for occupancy of from one to four families. The loan is made in whole by Wells Fargo, a lender who is regulated by and who has deposits and accounts insured by the Federal Government.

68.     Pursuant to 12 C.F.R. 1024.41(g)(1), if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale,

13

1    unless the borrower's loan modification application is denied and any appeal period expired.

2    Pursuant to 12 C.F.R. 1024.41(b)(2)(i)(B), if a servicer receives an incomplete application from a

3    borrower the servicer must provide a notice requesting additional documents to complete the

4    application and a deadline for submitting those documents.  Under 12 C.F.R. 1024.41(c)(2)(iv)

5    the servicer must treat the application as complete for the purposes of the 12 C.F.R. 1024.41(g)

6    during the time frame designated by the servicer for submitting the documents.

7    69.     A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA

8    (12 U.S.C. 2605(f)).

9    70.     At all times relevant, Plaintiffs lived in the Property as their principal residence.

10   71.     On or around January 14, 2014, more than thirty-seven days before a sale date for the

11   Property, Plaintiffs submitted a loan modification application to Defendant for review.

12   Thereafter, on or around January 20, 2014, Defendant sent Plaintiffs a notice under 12 C.F.R.

13   1024.41(b)(2)(i)(B) stating that additional documents and information was needed from Plaintiffs

14   on or before April 20, 2014 to complete the application.  Thus, under 12 C.F.R. 1024.41(c)(2)(iv),

15   Defendant was required to treat Plaintiffs' application as complete for purposes of section (g)

16   until April 20, 2014.

17   72.     Since a Notice of Default had already been recorded against the property, under 12 C.F.R.

18   1024.41(g), Defendant was not authorized to record a Notice of Trustee's Sale against the

19   Property until either (1) Plaintiffs failed to provide the documents requested by April 20, 2014, or

20   (2) Defendant made a determination on Plaintiffs' application and the appeal process was

21   complete.  However, Defendant recorded a Notice of Trustee's Sale when Plaintiffs' application

22   was facially complete on or around February 21, 2014 in violation of this statute, placing the

23   Property in imminent risk of foreclosure and damaging Plaintiffs' credit.

24   73.     Pursuant to 12 U.S.C. 2605(f), whoever fails to comply with any provision of this section

25   shall be liable to the borrower for each such failure in the sum of any actual damages to the

26   borrower as a result of the failure *and* any additional damages, as the court may allow, in the case

27   of a pattern or practice of noncompliance with the requirements of this section, in an amount not

28   to exceed $ 2,000.

*///*

## SIXTH CAUSE OF ACTION
### Unfair Competition – Violation of Business and Professions Code § 17200 *et seq.*

74.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

75.     Defendants' conduct, as alleged above, constitutes unlawful business practices, as defined in the California Business and Professions Code § 17200 *et seq.* California Business and Professions Code § 17200 *et seq.* borrows violations from other statutes and laws and makes them unlawful to engage in as a business practice.  Plaintiffs' California Business and Professions Code § 17200 allegations are *tethered* to the following laws:

76.     Defendants' breach of contract constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

77.     Defendants' violation of California Civil Code § 2923.6 constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

*78.*     Defendant WELLS FARGO's violation of California Civil Code § 2923.7 constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

*79.*     Defendant WELLS FARGO's violation of California Civil Code § 2924.17 constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

80.     Defendant WELLS FARGO's violation of 12 C.F.R. 1024.41(g) constitutes unlawful conduct under California Business and Professions Code § 17200 *et seq.*

81.     As a result of Defendants' wrongful conduct, Plaintiffs have suffered various damages and injuries according to proof at trial, including but not limited to foreclosure fees and imminent loss of their home.

82.     Plaintiffs seek injunctive relief enjoining Defendants from engaging in the unfair business practices described herein.

83.     Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

*///*

///

**DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

WHEREFORE, Plaintiffs NATHAN TERRY and GERALDINE TERRY demand a trial by jury.  Plaintiffs pray for judgment and order against Defendants, as follows:

1.  That judgment is entered in Plaintiffs' favor and against Defendants, and each of them;

2.  For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

3.  For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them from causing the Property to be sold, assigned, transferred to a third-party, or taken by anyone or any entity;

4.  For a preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them from seeking to evict Plaintiffs until the claims herein are resolved:

5.  For an order stating that Defendants engaged in unlawful business practices;

6.  For damages, disgorgement, and injunctive relief;

7.  For compensatory damages, attorneys' fees, and costs according to proof at trial;

8.  For such other and further relief as the Court may deem just and proper.


DATED: June 16, 2016                     Respectfully submitted,

                                         MELLEN LAW FIRM


                                         ___/s/ Sarah Shapero_____
                                         Sarah Shapero, Esq.
                                         Attorney for Plaintiffs
                                         NATHAN TERRY
                                         GERALDINE TERRY

16