IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN TERRY; GERALDINE TERRY,<br><br>          Plaintiffs,<br><br>     v.<br><br>WELLS FARGO BANK, N.A.; U.S. BANK, N.A.; and DOES 1 through 50, inclusive,<br><br>          Defendants.<br>_____/ | No. C 15-01483 WHA<br><br>**ORDER DENYING MOTION FOR LEAVE TO AMEND** |

**INTRODUCTION**

In this foreclosure dispute, plaintiff borrowers move for leave to file an amended complaint to assert a claim under federal regulations. To the extent stated herein, the motion is **DENIED**.

**STATEMENT**

The following well-pled facts are assumed to be true for the purposes of the present motion. In November 2006, plaintiffs Nathan Terry and Geraldine Terry obtained a mortgage from Wells Fargo Bank, N.A. to purchase a single-family residence in Fremont, California. In January 2011, another deed of trust was recorded on the property.

In July 2012, plaintiffs applied for a loan modification. In October 2012, Wells Fargo approved plaintiffs for a Trial Period Plan (the "TPP Agreement"). Pursuant to the TPP Agreement, plaintiffs made three trial period payments of $2,905.04 from November 2012 to

January 2013. The TPP stated that "[u]pon successful completion of these payments, we will offer you a mortgage modification" (Amd. Compl. ¶¶ 9–11).

In December 2012, in the middle of the trial period, Wells Fargo sent plaintiffs a letter stating that the mortgage was not in first lien position. The letter requested that plaintiffs obtain signed subordination agreements from the other lien holders on the property (*id.* ¶ 13). Plaintiffs then made repeated attempts to contact their "single point of contact" at Wells Fargo to inquire about the subordination issue. Plaintiffs' calls were not returned (*id.* ¶¶ 13–16).

In March 2013, after plaintiffs had successfully completed the trial period pursuant to the TPP Agreement, Wells Fargo sent plaintiffs a letter stating that they did not qualify for the mortgage assistance program. The letter provided no information about the reason for the denial (*id.* ¶ 19).

In November 2013, defendants recorded a notice of default. Plaintiffs again attempted to reach their "single point of contact" at Wells Fargo but to no avail. Plaintiffs reached a general Wells Fargo representative who advised plaintiffs to submit a new loan modification application. The representative indicated that she would send a modification application to plaintiffs. On January 6, 2014, plaintiffs received the application packet and, on or around January 14, 2014, plaintiffs submitted the application to Wells Fargo.

On or around January 14, 15, and 17, 2014, Wells Fargo (*id.* ¶¶ 23–24):

> sent Plaintiffs letters confirming receipt of Plaintiffs' application and [sic] would inform Plaintiffs if any <u>additional</u> documents were needed. Thereafter, Defendant sent Plaintiffs a letter requesting that Plaintiffs submit additional documents which were not initially requested from Plaintiffs by Defendant. Specifically, the letter stated that Plaintiffs would need to submit proof of income by no later than April 20, 2014. The letter also stated that "[w]e'll continue to work with you to help you avoid a foreclosure sale….[i]f your loan has been referred to foreclosure, we will not conduct a foreclosure sale on this loan while your documents are being reviewed."

On or around April 1, 2014, plaintiffs submitted all documentation requested by Wells Fargo.

Despite the pending modification application, defendants recorded a notice of trustee's sale in February 2014 (Amd. Compl. ¶ 26). From what can be gleaned from the complaint, the property has not yet been sold in foreclosure.

2

In March 2015, plaintiffs filed a complaint alleging: (1) breach of contract; (2) violation of California Civil Code Section 2923.6; (3) violation of California Civil Code Section 2923.7; (4) violation of California Civil Code Section 2924.17; (5) violation of California Civil Code Section 2924.10; and (6) violation of Business and Professions Code Section 17200 *et seq*.

Defendants moved to dismiss the complaint for failure to state a claim or, in the alternative, for a more definite statement (Dkt. No. 21). A subsequent order allowed the bulk of the claims to proceed but granted the motion to dismiss the claim under Section 2923.6 as to the 2014 application. As to that claim, the order concluded that plaintiffs had not pled facts sufficient to show that they had submitted a "complete" modification application in 2014 as required under Section 2923.6 and that, therefore, the 2014 application (as opposed to the 2012 modification application) had not triggered HBOR's protections against dual-tracking.

Plaintiffs now seek to file an amended complaint that alleges that, under *federal* regulations, plaintiffs' 2014 modification application was complete and that, therefore, defendants violated federal regulations by recording a notice of trustee's sale in February 2014.

**ANALYSIS**

Under Rule 15, leave to amend should be freely given absent undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, futility of amendment, and prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The general rule that parties be allowed to amend does not extend to situations where amendment would be an exercise in futility or where the amended complaint would also be subject to dismissal. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

The federal regulations contain prohibitions against dual-tracking that are similar to those contained in the California Homeowner's Bill of Rights. A previous order concluded that plaintiffs' 2014 modification application did not trigger the dual-tracking prohibitions under HBOR. Plaintiffs now seek leave to amend in order to allege that the 2014 modification application is entitled to the dual-tracking prohibitions under *federal* regulations. Specifically,

3

1 plaintiffs contend that, under 12 C.F.R. 1024.41(c)(2)(iv), their 2014 application was "facially
2 complete," and that, therefore, defendants were prohibited from recording a notice of trustee's
3 sale under 12 C.F.R. 1024.41(g).

4 Under federal regulations, a servicer shall not move for foreclosure judgment or order of
5 sale, or conduct a foreclosure sale if a borrower has submitted a "complete" modification
6 application. 12 C.F.R. 1024.41(g). A servicer can also be prohibited from moving for
7 foreclosure judgment or order of sale if an application is "facially complete" and certain other
8 conditions are met. Under 12 C.F.R. 1024.41(c)(2)(iv), an application is deemed "facially
9 complete" only "if a borrower submits all the missing documents and information as stated in
10 the notice required pursuant to § 1026.41(b)(2)(i)(B), or no additional information is requested
11 in such notice."

12 Plaintiffs allege that they received two types of responses from Wells Fargo: (1) letters
13 sent on January 14, 15, and 17, 2014, acknowledging receipt of the application; and (2) a letter
14 sent on January 20, 2014, which requesting that plaintiffs submit additional documents (Amd.
15 Compl. ¶¶ 23–24). At the hearing, plaintiffs' counsel asserted that the letters sent on January
16 14, 15, and 17 were "notices" under 12 C.F.R. 1024.41(b)(2)(i)(B). Given this interpretation,
17 and given the allegation that this letter did *not* ask for additional documentation, plaintiffs assert
18 that their modification was "facially complete" under 12 C.F.R. 1024.41(c)(2)(iv) and plaintiffs
19 were therefore eligible for the regulations' protections from foreclosure proceedings.

20 In essence, plaintiffs contend that because Wells Fargo acknowledged receipt of the
21 modification application and did not simultaneously request additional documentation,
22 plaintiffs' modification application should be deemed "facially complete" as of the day of the
23 first acknowledgment letter. This order concludes, however, that the letters sent on January 14,
24 15, and 17 were *not* "notices" within the meaning of 12 C.F.R. 1024.41(b)(i)(B) and that
25 therefore plaintiffs' application was not "facially complete" as of February 21 when Wells
26 Fargo recorded the notice of trustee's sale.

4

Under 12 C.F.R. 1024.41(b)(i)(A), a servicer must "promptly" determine if an application is complete upon receipt of a loss mitigation application forty-five or more days before a foreclosure sale. Under 12 C.F.R. 1024.41(b)(i)(B), a servicer must then:

> Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

The letters sent to plaintiffs on January 14, 15, and 17 allegedly acknowledged receipt of the application but, as alleged, the letters did *not* address whether "the servicer ha[d] determined that the loss mitigation application [was] either complete or incomplete" as required under 12 C.F.R. 1024.41(b)(i)(B). The letters merely stated that Wells Fargo "would inform Plaintiffs if any additional documents were needed" (Amd. Compl. ¶ 24).

This order therefore concludes that the letters sent on January 14, 15, and 17 were *not* "notices" within the meaning of 12 C.F.R. 1024.41(b)(i)(B). To hold otherwise would be to discourage servicers from acknowledging receipt of an application until all missing documentation has been identified. Borrowers benefit from prompt acknowledgment of an application, however, as time is precious when a foreclosure is on the horizon. As long as the bank "promptly" determines completeness, it need not do so "immediately."

To be sure, Wells Fargo had a duty to notify plaintiffs within five days (excluding weekends and holidays) as to whether their application was complete or incomplete. But here, the facts alleged suggest that Wells Fargo complied with that duty by sending a letter on January 20 that requested additional documentation. As opposed to the letters sent on January 14, 15, and 17, this letter was a "notice" within the meaning of 12 C.F.R. 1024.41(b)(i)(B). As such, plaintiffs' application was not "facially complete" as of February 21 when defendants recorded a notice of trustee's sale because plaintiffs had not yet submitted the documentation

5

requested (they did not do so until April 1). Because the application was not "facially complete" on February 21, it did not trigger the prohibitions against dual-tracking.

Amendment would be futile because the proposed amended complaint fails to state a claim under the federal regulations. As such, plaintiffs' motion for leave to amend is **DENIED**.

## CONCLUSION

A prior order allowed the bulk of plaintiffs' claims to proceed but granted dismissal as to one of plaintiffs' claims. Plaintiffs now seek leave to file an amended complaint. For the reasons stated herein, plaintiffs' motion for leave to amend is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 26, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE